Michelle Erko,
     Audrey Mundstock, Athena Anthony,
     George Kibbe,              Court File No.  14-1036 (RHK/SER)
     On behalf of Themselves and
     Other Similarly Situated Workers,

     Plaintiffs,

v.                             **AMENDED COMPLAINT**

USA Pools of Georgia, Inc.,         **(JURY TRIAL DEMANDED)**
     USA Pools of Georgia, Inc.,
     USA Pools of Georgia, Inc.,
     USA Pools of Illinois, Inc.,
     USA Pools of Delmarva, Inc.,
     Doe Corporation(s) known as USA Management;
     Troy Legg and Robert Legg.

     Defendants.

---

Plaintiffs Michelle Erko, Audrey Mundstock, Athena Anthony, and George Kibbe

state and allege on behalf of themselves and on behalf of others similarly situated:

## **JURISDICTION AND VENUE**

1.     This Court has original jurisdiction to hear this Complaint and to adjudicate

the claims stated herein under 28 U.S.C. § 1331, this action being filed under the Federal

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et</u> <u>seq.</u> and the Employee

Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 <u>et</u> <u>seq.</u>

2.     This Court has supplemental jurisdiction over Plaintiffs' and the putative

class members' state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in the District of Minnesota.

**PLAINTIFFS**

4.      Plaintiff Michelle Erko is an adult resident of Minneapolis, Minnesota. Plaintiff Erko worked as a Pool Manager / Lifeguard for Defendants in Minnesota within the last three years.

5.      Plaintiff Audrey Mundstock is an adult resident of South Minneapolis, Minnesota. Plaintiff Mundstock worked as Lifeguard for Defendants in Minnesota within the last three years.

6.      Plaintiff Athena Anthony is an adult resident of Minneapolis, Minnesota. Plaintiff Anthony worked as a Lifeguard for Defendants USA Pools of Georgia, Inc. and USA Pools of Illinois, Inc. in Minnesota within the last three years.

7.      Plaintiffs Erko, Mundstock, and Anthony are collectively termed "the Minnesota Plaintiffs."

8.      Plaintiff George Kibbe is an adult resident of Hampstead, Maryland. Plaintiff Kibbe worked as a Pool Manager / Lifeguard for Defendants USA Pools of Georgia, Inc. and USA Pools of Delmarva, Inc. in Maryland during the last three years, and in 2013 and 2014 he worked as a Regional Manager in Maryland, Virginia, and Delaware.

9.      On or around May 2014, Plaintiff Kibbe became aware that his employer had changed named from USA Pools to USA Management LLC ("USA Management"). Other than the change in name, Plaintiff was not aware of any other change in his or

others' employment.

<strong><u>DEFENDANTS</u></strong>

10.     Defendant USA Pools of Georgia, Inc. is incorporated in Georgia with its principal office address at 1073 Green Street, Roswell, Georgia.

11.     Defendant USA Pools of Georgia, Inc. is also incorporated in Nevada.

12.     At all relevant times, USA Pools of Georgia, Inc. incorporated in Nevada had its principal place of business at the same corporate office as Defendant USA Pools of Georgia in Georgia.

13.     Defendant USA Pools of Illinois, Inc. is incorporated in Nevada.

14.     At all relevant times, Defendant USA Pools of Illinois, Inc. had its principal place of business at the same corporate office as Defendant USA Pools of Georgia in Georgia.

15.     Defendant USA Pools of Illinois, Inc. is listed on the Minnesota Plaintiffs' pay stubs in connection with wages they received from Defendants.

16.     Defendant USA Pools of Delmarva, Inc. is incorporated in Nevada.

17.     At all relevant times, Defendant USA Pools of Delmarva, Inc. had its principal place of business at the same corporate office as Defendant USA Pools of Georgia in Georgia.

18.      Defendant USA Pools of Delmarva, Inc. is listed on Plaintiff George Kibbe's pay stubs in connection with wages he received from Defendants.

19.     Defendants identified above collectively call themselves "USA Pools."

20.     Defendant Troy Legg is an owner and officer of USA Pools, who exercised

operational control over Plaintiffs and the Similarly Situated Workers. Defendant Troy Legg is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d); Georgia Code § 34-7-2; Minn. Stat. § 177.23, subd. 6; and MD Code, Labor and Employment, § 3-502(c).

21.     Defendant Robert Legg is an owner and officer of USA Pools, who exercised operational control over Plaintiffs and the Similarly Situated Workers. Defendant Robert Legg is an "employer" pursuant to the FLSA, 29 U.S.C. §203(d); Georgia Code § 34-7-2; Minn. Stat. § 177.23, subd. 6; and MD Code, Labor and Employment, § 3-502(c).

22.     Defendant(s) Doe Corporation are one or more companies referring to themselves individually and / or collectively as "USA Management." Defendant(s) Doe Corporation are successors and / or are the same as and / or are an alias or assumed name of the integrated enterprise / joint employer known as "USA Pools."

### INTEGRATED ENTERPRISE / JOINT EMPLOYER FACTS

23.     At all relevant times, Defendant USA Pools of Georgia, Inc. registered as a Georgia corporation has been engaged as a year-round staffing agency, contracting with third-party entities which have swimming pools in states across the country to recruit, employ, train, manage, and pay USA Pools of Georgia, Inc.'s staff members stationed at the third-party entities' locations in, but not limited to, the following states:   Alabama, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia.

24.     At all relevant times, USA Pools of Georgia, Inc. registered as a Georgia corporation has been engaged as a year-round as a staffing agency under the direction and control of, and as a part of the integrated enterprise of the other Defendants.

25.     At all relevant times, USA Pools of Georgia, Inc. registered as a Nevada corporation has been engaged as a year-round as a staffing agency under the direction and control of, and as a part of the integrated enterprise of the other Defendants.

26.     At all relevant times, USA Pools of Illinois, Inc. has been engaged as a year-round as a staffing agency under the direction and control of, and as a part of the integrated enterprise of the other Defendants.

27.     At all relevant times, USA Pools of Delmarva, Inc. has been engaged as a year-round staffing agency under the direction and control of, and as part of the integrated enterprise of the other Defendants.

28.     At all relevant times, Defendant(s) Doe Corporation have been engaged as one or more year-round staffing agencies under the direction and control of, and as part of the integrated enterprise of the other Defendants.

29.     USA Pools of Georgia, Inc. and the other Defendants also operate as an integrated enterprise with USA Pools of Pennsylvania, Inc., USA Pools of Tennessee, Inc., USA Pools of North Carolina, Inc., USA Pools of Houston, Inc., USA Pools of Dallas, Inc., USA Pools of New York, Inc., USA Pools of Florida, Inc., USA Pools of New York, Inc., USA Pools of North Carolina, Inc., USA Pools of Ohio, Inc., USA Pools of Pennsylvania, Inc., and USA Pools of Texas, Inc.

30.     All Defendants and other entities forming the integrated enterprise / joint

employer with USA Pools of Georgia, Inc. refer to themselves collectively as "USA Pools" in publications and on the internet, and in contracts and other legal documents. The integrated enterprise represents itself as one entity called "USA Pools" to the public, independent contractors, affiliates, agents, and employees.

31.     Starting around May 2014, the integrated enterprise / joint employer also started representing itself as one entity called "USA Management" to the public, independent contractors, affiliates, agents, and employees.  Other than representing itself as "USA Management," the enterprise did not alter its policies and procedures.

32.     Defendants and the other entities in the USA Pools integrated enterprise operate as a single employer with unified operations and control over policies, procedures, practices, contracts, pay systems, and the like, which are all created, administered, and enforced through the corporate headquarters in Georgia.

33.     Defendants and the other entities in the USA Pools integrated enterprise use identical or nearly-identical forms, policies, procedures, advertisements, websites, training materials, contracts, and other documents all created by, issued by, and or directed by the same corporate office in Georgia.

34.     Defendants and the other entities in the USA Pools integrated enterprise share administrative, human resources, and other governance staff, as well as operational and financial procedures, policies, and staff stationed in the Georgia corporate office.

35.     Defendants and the other entities in the USA Pools integrated enterprise maintained employee benefit plans for employees of Defendants and the other entities in the USA Pools integrated enterprise.

36.     Defendants and the other entities in the USA Pools integrated enterprise have transferred assets, liabilities and operations to Defendant(s) Doe Corporation with the intent of avoiding liability for the unlawful conduct alleged herein.

37.     Defendants and the other entities in the USA Pools integrated enterprise are all owned and operated by the Legg family, who are located in Georgia.

38.     Specifically, at all relevant times, Defendants Troy Legg and Robert Legg have been owners and/or officers of the other Defendants, and their roles within each Defendant and the integrated enterprise generally, directly affect the nature or conditions of the Plaintiffs' and similarly situated individuals' employment, as do their decisions.

## INDEPENDENT CONTRACTOR MISCLASSIFICATION FACTS

39.     Defendants hired, scheduled, trained, managed, and paid Plaintiffs and the Similarly Situated Workers, including lifeguards, head guards, managers, assistant managers, aquatic directors, subs, swim coaches and instructors, customer service personnel, concessions personnel, and other service workers, to perform USA Pools' services at various third party entities' locations around the United States.

40.     Defendants misclassified Plaintiffs and the Similarly Situated Workers as "independent contractors" instead of "employees."

41.     Defendants represented to Plaintiffs and the Similarly Situated Workers, business contacts, and the public that it has 2,000 to 2,500 workers nationwide.

42.     At all relevant times under common law and pursuant to state and federal law, Defendants' classification of Plaintiffs and the Similarly Situated workers as independent contractors was wrongful.  Plaintiffs and the Similarly Situated Workers

should have been properly classified as "employees."

43. On or about January 11, 2010, Defendants received a letter from the Internal Revenue Service informing them that USA Pools was misclassifying lifeguards and pool managers as "independent contractors," when they should have been classified as "employees."

44. After receiving this Determination Letter, and despite other complaints to the Internal Revenue Service and various state Departments of Labor about Defendants' unlawful misclassification system, Defendants willfully and intentionally continued to classify Plaintiffs and the Similarly Situated Workers as "independent contractors" when they were actually "employees."

45. The purpose of Defendants' misclassification of workers was to unlawfully shift its share of taxes and other business expenses onto its misclassified employees and to avoid other obligations that employers owe to employees but not to independent contractors under state and Federal law, such as minimum wage and overtime payments, avoiding unlawful deductions, maintaining personnel records, and the like.

46. Defendants, through their corporate office in Georgia, directed and/or controlled Plaintiffs and the Similarly Situated Workers' schedules and arranged the locations at which they were assigned to do their jobs.

47. Defendants, through their corporate office in Georgia, controlled, provided, or sold Plaintiffs and the Similarly Situated Workers the tools, equipment, and supplies they were required to use on the job; Plaintiffs and the Similarly Situated Workers were not permitted to choose or use their own tools, equipment, or supplies.

48.     Defendants, through their corporate office in Georgia, hired, disciplined, and fired Plaintiffs and the Similarly Situated Workers, and prohibited Plaintiffs and the Similarly Situated Workers from hiring or firing own workers.

49.     Defendants, through their corporate office in Georgia, controlled and directed each of the Plaintiffs' and the Similarly Situated Workers' daily tasks, job requirements and overall work performance.

50.     Defendants, through their corporate office in Georgia, controlled and dictated the order and sequence Plaintiffs and the Similarly Situated Workers were required to follow to complete each work task.

51.     Defendants, through their corporate office in Georgia, controlled and dictated the training required for Plaintiffs and the Similarly Situated Workers regarding the manner in which they were to perform services.

52.     Defendants, through their corporate office in Georgia, paid for and reimbursed the business expenses (with the exception of the unlawful deductions from wages listed below) that Plaintiffs and the Similarly Situated Workers incurred.

53.     With the exception of the unlawful deductions from wages listed below, Plaintiffs and the Similarly Situated Workers did not have any investment in the business other than their own time spent in their employment for Defendants.

54.     Defendants, through their corporate office in Georgia, prohibited Plaintiffs and the Similarly Situated Workers from seeking out other business opportunities in the relevant market through advertising and other marketing methods, unless their efforts to seek other business was as a representative or through USA Pools.

55.     Defendants, through their corporate office in Georgia, paid Plaintiffs and the Similarly Situated Workers a regular wage for hourly or weekly work completed for USA Pools at specified intervals pre-scheduled by USA Pools.

56.     Plaintiffs and the Similarly Situated Workers were required to submit all business-related records and documentation to Defendants at the Georgia corporate office.

57.     Plaintiffs and the Similarly Situated Workers did not receive the profits, and were not responsible for the losses of the business.

58.     Plaintiffs and the Similarly Situated Workers provided the services that were at the heart of Defendants' regular business activity; Defendants' success depended largely, if not entirely, on Plaintiffs' and the Similarly Situated Workers' performance of services for Defendants.

59.     Defendants exercised total direction and control over Plaintiffs' and the Similarly Situated Workers' activities.  For example, Defendants, through their corporate office, issued detailed policies, training, and instructions regarding Plaintiffs' and the Similarly Situated Workers' job tasks and duties, including, but not limited to:

   A.     Opening procedures for the facility and / or swimming pool;

   B.     Membership control and fee collection policies and procedures;

   C.     Application of swimmers' test procedures for swimmers under the age of 12;

   D.     Cleaning of deck, tables, chairs, and tile at each facility;

   E.     Vacuuming, skimming, and recording chemical levels at each facility;

F.      Inspection of filtration equipment;

G.      Checking the swimming pool filter pressure and backwash;

H.      Trash removal;

I.      Closing umbrellas, arranging chairs, and inspecting the facility at the close of the day;

J.      Enforcement of general pool and / or facility rules;

K.      Consistent maintenance of a "POSITIVE ATTITUDE";

L.      Directing use of timekeeping systems; and

M.      Other similar and related policies, rules, and procedures regarding the performance of duties.

60.    As a result of the misclassification of its employees as "independent contractors," Defendants received and retained funds that should have been paid to and / or for the benefit of Plaintiffs and the Similarly Situated Workers. Thus, as a result of this misclassification, Plaintiffs and the Similarly Situated Workers were denied rights and benefits under state and federal law, including but not limited to: wages, participation in employee health and welfare benefit plans, paid time off, workers' compensation, unemployment insurance benefits, and income tax withholding.

## UNLAWFUL EMPLOYMENT CONTRACTS
## AND MINIMUM WAGE / OVERTIME VIOLATIONS

61.    Defendants, through their corporate office in Georgia, hired Plaintiffs and the Similarly Situated Workers, requiring them to sign Defendants' nearly-identical form contracts before they were permitted to start working.

62.    The form contracts all stated that Plaintiffs and the Similarly Situated Workers were "independent contractors," rather than employees.

63. Defendants required all Plaintiffs and the Similarly Situated Workers to sign such form contracts even though many of them were under the age of 18 years, and their guardians were not informed of the contracts in advance and did not co-sign the contracts.

64. Defendants' form contracts stated that Plaintiffs and the Similarly Situated Workers would be paid a flat base rate of pay instead of being eligible to earn overtime pay.

65. Defendants, through their corporate office in Georgia, paid Plaintiffs and the Similarly Situated Workers a flat base rate of pay, and did not allow any of them to earn one and one-half times their regular rate of pay for time spent working in excess of forty hours per workweek.

66. Defendants' form contracts stated that Defendants would reduce the hourly-paid Plaintiffs' and the Similarly Situated Workers' wages to minimum wage if they did not work the minimum number of hours or minimum dates that Defendant dictated.

67. Defendants, through their corporate office in Georgia, regularly interfered with Plaintiffs' and the Similarly Situated Workers' schedules so that they were unable to work the minimum number of hours that Defendants dictated.

68. Defendants, through their corporate office in Georgia, required Plaintiffs' and the Similarly Situated Workers' to sign contracts stating that they would have their pay reduced to minimum wage if they did not work Defendants' stated minimum duration between dates, even though Defendants were informed in advance of the employment that some of the Plaintiffs and the Similarly Situated Workers were unable

to work the full duration of the contract timeframe because they were students and school was starting.

69.     Defendants, through their corporate office in Georgia, reduced Plaintiffs' and similarly-situated putative class members' pay to minimum wage if they did not work the minimum number of hours or the minimum duration of time dictated by Defendants, and if they did not provide at least a two-week written notice.

70.     Defendants, through their corporate office in Georgia, also informed Plaintiffs' and the Similarly Situated Workers that if they did not log in or log out properly on the Timekeeper System for any reason, and if they did not send Defendants' corporate office in Georgia a "certified letter asking for retroactive pay" which was approved by their manager and "received by USA Pools corporate office within ten (10) days of [the] missed checked in or out date," their pay would be reduced to minimum wage and the amount of time improperly or not logged as work time would not be paid.

71.     Defendants, through their corporate office in Georgia, reduced some of the Plaintiffs' and the Similarly Situated Workers' pay to minimum wage, and also unlawfully took deductions out of the minimum wages paid so that Plaintiffs' and the Similarly Situated Workers' pay was reduced below minimum wage.

72.     Plaintiffs and the Similarly Situated Workers were required to log-in for their shifts and log-out for their shifts on Defendants' Timekeeper systems.

73.     Defendants failed to pay Plaintiffs and the Similarly Situated Workers for all of their time worked even though Defendants received the data indicating the actual time Plaintiffs and the Similarly Situated Workers logged-in and logged-out through their

corporate office in Georgia.

74. Instead, Defendants, through their corporate office in Georgia, only paid Plaintiffs and the Similarly Situated Workers based upon their scheduled shift times, and refused to pay Plaintiffs and the Similarly Situated Workers for any time that they logged in or out before or after the scheduled shift times.

75. Thus, when Plaintiffs and the Similarly Situated Workers came to work early to prepare their facility for use for the day, they were not paid for the time they worked in advance of the pre-programmed shift start time in Defendants' Timekeeper system. However, when Plaintiffs and the Similarly Situated Workers were even one minute late for their shift, Defendants, through their corporate office in Georgia, reduced their pay by one minute.

76. Likewise, when Plaintiffs and the Similarly Situated Workers worked past their pre-programmed shift end time because, for example, customers did not leave the premises on time, or clean-up took longer than usual, Defendants did not pay them for the additional time they worked. However, when Plaintiffs and the Similarly Situated Workers logged out even one minute early for their shift, Defendants reduced their pay for one minute.

77. In addition, Defendants required Plaintiffs and the Similarly Situated Workers to attend training for a set period of time on specific dates without compensation.

78. Defendants were all aware that Plaintiffs and the Similarly Situated Workers were working and not being paid for all of their time, because many of the

Plaintiffs and the Similarly Situated Workers complained about not being paid for their time.

79.     Defendants were all aware that Plaintiffs and the Similarly Situated Workers were not receiving their full minimum wage and overtime rights, because many of the Plaintiffs and the Similarly Situated Workers complained about not being paid appropriate amounts under the law.

## UNLAWFUL PAYMENT METHOD AND DEDUCTIONS FROM WAGES

80.     Defendants, through their corporate office in Georgia, opened pay card accounts for each Plaintiff and Similarly Situated Worker, and required each worker to be paid through those pay card accounts regardless of whether the workers were under or over age 18.

81.     Defendants and their corporate office in Georgia required Plaintiffs to pay service, transfer, and / or withdrawal fees for use of their pay card and pay card accounts. Thus, in order to receive the wages they were paid, Plaintiffs and the Similarly Situated Workers were required to pay a number of fees, which reduced their wages even further.

82.     Even though some of the Plaintiffs and Similarly Situated Workers repeatedly informed Defendants that the pay card accounts could not be lawfully mandated, and that unlawful deductions were taken from their wages through the forced use of the accounts, Defendants continued to require Plaintiffs and the Similarly Situated Workers to receive payment through the pay card accounts that the corporate office in Georgia arranged.

83.     Defendants, through their corporate office in Georgia, required Plaintiffs

and the Similarly Situated Workers to pay the pay card account fees even if their pay before those fees had already been reduced to minimum wage or was not meeting a requisite overtime value. This requirement resulted in Plaintiffs and the Similarly Situated Workers being paid less than the minimum wage and /or a requisite overtime wage.

84.     Defendants, through their corporate office in Georgia, deducted $0.40 per hour from Plaintiffs and the Similarly Situated Workers' pay for every hour worked.

85.     Defendants claimed that they would pay this $0.40 per hour back to Plaintiffs and the Similarly Situated Workers at the end of the year if a number of requirements were met, many of which were out of Plaintiffs' and the Similarly Situated Workers' control.

86.     Defendants, through their corporate office in Georgia, failed to fully reimburse Plaintiffs and the Similarly Situated Workers for the $0.40 per hour that the corporate office in Georgia withheld from their earned wages.

87.     Defendants, through their corporate office in Georgia, deducted $0.40 per hour from Plaintiffs' and the Similarly Situated Workers' wages even if their pay before those deductions had already been reduced to minimum wage.

88.     Defendants required Plaintiffs and the Similarly Situated Workers to purchase uniforms and certain equipment from Defendants' corporate office in Georgia in the form of a required package for an up-front payment in an amount between $110.00 - $180.00, depending on whether the uniform was for a male or a female and depending on which position the person held.

89.     The packages included items such as shirts, shorts, swim suits, whistles, backpacks, name-tags and other work-related equipment.

90.     Plaintiffs and the Similarly Situated Workers were not permitted to work until they purchased these items from Defendants' corporate office in Georgia.

91.     Defendants and their corporate office in Georgia charged Plaintiffs and the Similarly Situated Workers significantly more for the package of uniform and equipment items than the actual cost to Defendants, so that Defendants and their corporate office in Georgia not only shifted their business costs to Plaintiffs and the Similarly Situated Workers, but also received a profit from selling these items to Plaintiffs and the Similarly Situated Workers.

## FLSA COLLECTIVE ACTION ALLEGATIONS

92.     Plaintiffs bring claims for violations of the Fair Labor Standards Act ("FLSA") pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the putative Collective Class, because Plaintiffs' claims are similar to the claims of the members of the putative Collective Class.

93.     Plaintiffs bring their first Claim for Relief on behalf of the following:

**Collective Class Definition:**  All persons who worked in the United States as a lifeguard, head guard, manager, sub, aquatic director, assistant manager, lesson manager, concessions worker, customer service worker, or installments worker for Defendants through their integrated enterprise from three years prior to the filing of the original Complaint through the date of entry of Judgment, who have not been compensated with at least minimum wage for all hours worked, and one-and-one-half times their regular hourly rate of pay for all work performed in excess of forty hours per workweek, and / or for whom Defendants have failed to maintain and preserve records containing the following information:

1. Full name and social security number;
2. Address;
3. Date of Birth;
4. Gender and occupation;
5. Time and day of week when workweek begins;
6. Hours worked each day;
7. Total hours worked each workweek;
8. Basis on which worker's wages are paid;
9. Regular hourly pay rate;
10. Total daily or weekly straight-time earnings;
11. Total overtime earnings for the workweek;
12. All additions to or deductions from the worker's wages;
13. Total wages paid each pay period; and
14. Date of payment and pay period covered by the payment.

94. Defendants, through their corporate office in Georgia, misclassified Plaintiffs and the Collective Class as independent contractors, and as a result of the misclassification, suffered and permitted Plaintiffs and the Collective Class to work for less than minimum wage and / or more than forty (40) hours per week without paying them proper overtime compensation for all hours worked beyond forty (40) per week.

95. Defendants' conduct has been widespread, repeated, and consistent.

96. Based on Defendants' own representations in their corporate office's policies, procedures, and website materials, there are between 2,000 and 2,500 Similarly Situated Workers at any given time, not taking turnover into consideration over the course of the last three years.

97. On information and belief, the majority of these Similarly Situated Workers

are in the putative Collective Class and have been denied minimum wage and / or overtime pay for all hours worked in violation of the FLSA, and would benefit from the issuance of a Court-supervised notice in this lawsuit and the opportunity to join the present action.

98. Plaintiffs and the putative Collective Class they seek to represent are similarly situated, have substantially similar contract agreements and pay provisions and policies, and are or were subject to Defendants' corporate office's common practices, policies, and plan of failing to keep accurate records, paying less than minimum wage, and failing to pay overtime in violation of the FLSA.

99. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Collective Class and subclasses.

100. Plaintiffs have retained counsel competent and experienced in complex class actions, FLSA, labor law, and employment law litigation.

101. Defendants knew that Plaintiffs and the Collective Class performed work that should have resulted in compensation at a rate of at least minimum wage and overtime rates.

102. Defendants operated under a scheme to deprive Plaintiffs and the Collective Class of minimum wage and overtime pay by requiring them to complete work for which they were not paid at all, misclassifying them as "independent contractors," taking unlawful deductions from their wages, and thereby failing to compensate them at a minimum wage rate or at overtime rates for their hours worked.

103. Defendants' conduct as set forth herein was willful and in bad faith, and has

caused significant damages to Plaintiffs and the Collective Class.

104.    Defendants are jointly and severally liable as an integrated enterprise under the FLSA for failing to properly compensate Plaintiffs and the Collective Class.

105.    Defendants and their contracted agents have knowledge of some of the contact information for the putative Collective Class members.  To the extent required by law, notice will be provided to the putative Collective Class members by use of techniques in a form of notice that has been used customarily in Collective Class actions, subject to court approval.

## RULE 23 ERISA CLASS ACTION ALLEGATIONS

106.    Plaintiffs and the ERISA Class reallege and incorporate by reference the above paragraphs as if fully set forth herein.

107.    Plaintiffs bring their claims for violations of ERISA on their own behalf and as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. The ERISA Class is defined as follows:

> **ERISA Class:** All persons who worked for Defendants' integrated enterprise in the United States as a lifeguard, head guard, manager, sub, aquatic director, lesson manager, assistant manager, installments personnel, concessions personnel, customer service relations personnel, or the like at any time from six years prior to the filing of the original Complaint to the entry of judgment in this action and were classified as "independent contractors" and thereby denied various protections under ERISA.

108.    The persons in the ERISA Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such persons in currently unknown, Plaintiffs believe that the class as defined above includes over 5,000 members.

109. There are questions of law and fact common to the ERISA Class that predominate over any questions solely affecting individual members, including, but not limited to:

    a. Whether Plaintiffs and the members of the ERISA Class were wrongfully classified as "independent contractors" under statutory and common law;

    b. What "employee benefit plans," including but not limited to health, dental, and vacation pay plans, Defendants establshed and maintained for employees;

    c. Whether Plaintiffs and the members of the ERISA Class were owed benefits under the terms of Defendants' employee benefit plans;

    d. Whether Plaintiffs and the members of the ERISA Class were denied benefits under the terms of Defendants' employee benefit plans by virtue of their misclassification as independent contractors when they should have been classified as employees;

    e. Whether Plaintiffs and the ERISA Class members' attempts to exhaust administrative remedies pursuant to the benefit plans would have been futile; and

    f. The value of unpaid benefits, prejudgment interest, costs, and attorneys' fees.

110. Plaintiffs' claims are typical of those of the ERISA Class. Plaintiffs, like other members of the ERISA Class, were subjected to Defendants' policy of misclassifying workers as "independent contractors" rather than "employees," and thereby denying them eligibility for and access to employee welfare and benefit plans.

111. Plaintiffs, like the other members of the ERISA Class, suffered financial losses as a direct and proximate result of being misclassified and thereby being denied access to the benefits they should have received as employees.

112. Given Plaintiffs' financial losses, Plaintiffs have the incentive, and are

committed to vigorous prosecution of this Action.

113. Plaintiffs will fairly and adequately protect the interests of the ERISA class.

114. Plaintiffs have retained counsel experienced in complex misclassification and employment litigation, including ERISA cases.

115. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of litigation involving unpaid benefits where individual claimants may lack the financial resources to vigorously litigate separate lawsuits against a large corporate integrated enterprise as Defendants. The damages suffered by individual members of the ERISA Class members are small compared to the expense and burden of individual prosecution of this litigation.

116. Class certification of the ERISA Class is appropriate, because inconsistent or varying adjudications with respect to individual members of the ERISA Class would establish incompatible standards of conduct for Defendants and their integrated enterprise.

117. Class certification of the ERISA Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants and the integrated enterprise has acted or refused to act on grounds generally applicable to the ERISA Class, thereby making declaratory and injunctive relief appropriate.

118. Plaintiffs intend to send notice to all members of the ERISA Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

# GEORGIA CLASS ACTION ALLEGATIONS

119. Plaintiffs bring the Georgia claims on their own behalf and as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. The Georgia Rule 23 Class is defined as follows:

> **Georgia Class:** All persons who worked for Defendants' integrated enterprise in the United States as a lifeguard, head guard, manager, sub, aquatic director, lesson manager, assistant manager, installments personnel, concessions personnel, customer service relations personnel, or the like at any time from four years prior to the filing of the original Complaint to the entry of judgment in this action, and were not paid their full wages due in a timely manner via a proper method of payment, and / or were required to confer benefits on Defendants and their integrated enterprise which they are not legally or equitably permitted to retain.

120. The persons in the Georgia Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such persons in currently unknown, Plaintiffs believe that the class as defined above includes over 5,000 workers.

121. There are questions of law and fact common to the Georgia Class that predominate over any questions solely affecting individual members, including, but not limited to:

a. Whether Plaintiffs and the members of the Georgia Class were wrongfully classified as "independent contractors" under statutory and common law;

b. Whether the contracts between Plaintiffs and the members of the Georgia Class and Defendants and their integrated enterprise are void as a matter of public policy because they:

  i. misclassify Plaintiffs and the members of the Georgia Class as "independent contractors";

  ii. violate the IRS Determination Letter;

iii.  mandate that minors contract without guardian consent; and

iv.  require payments by Plaintiffs and the members of the Georgia Class to Defendants and their integrated enterprise in violation of other Federal and states' laws and in violation of the Full Faith and Credit Clauses of the Federal and states' Constitutions;

c.  Whether Defendants and their integrated enterprise required Plaintiffs and the Georgia Class to complete pre and / or post-shift work, and retained the value of the wages they should have been paid for that work;

d.  Whether Defendants and their integrated enterprise inequitably withheld $0.40 per hour of Plaintiffs' and the Georgia Class members' earned wages, and failed to return that money as promised;

e.  Whether Defendants and their integrated enterprise retained the value of Plaintiffs' and the Georgia Class members' work by inequitably retaining amounts owed to Plaintiffs and the Georgia Class members for their full hourly wages and overtime payments for their own benefit;

f.  Whether Defendants and their integrated enterprise required Plaintiffs and the Georgia Class members to fund payroll and other expenses by requiring them to pay fees associated with receiving their wages through a credit / pay card;

g.  Whether Defendants and their integrated enterprise inequitably retained the benefits wrongly obtained from Plaintiffs and the Georgia Class as a result of their mandatory attendance at training and in-service sessions without payment for their time and/or while requiring Plaintiffs and the Georgia Class to pay for the courses;

h.  Whether Defendants and their integrated enterprise inequitably profited by requiring Plaintiffs and the Georgia Class to pay them excessive amounts for uniforms and work equipment;

i.  Whether Defendants and their integrated enterprise were unjustly enriched at Plaintiffs' and the Georgia Class's expense;

j.  Whether equity requires Defendants and their integrated enterprise to reimburse Plaintiffs and the Georgia Class in quantum meruit;

k.  Whether Defendants and their integrated enterprise violated Georgia Code

§ 34-7-2 by failing to make full and timely payments of amounts owed through a proper method of payment; and

l. The formula for calculating Plaintiffs and the Georgia Class members' damages plus interest, costs, and attorneys' fees.

122. Plaintiffs' claims are typical of those of the Georgia Class.

123. Plaintiffs, like other members of the Georgia Class, were subjected to Defendants' policy of misclassifying workers as "independent contractors" rather than "employees," and thereby denying them payment for the full value of work performed, and also requiring them to affirmatively pay for certain business expenses.

124. Defendants' corporate office in Georgia required Plaintiffs and the other members of the Georgia Class to sign contracts which are void as a matter of public policy in order to work for Defendants and the integrated enterprise.

125. Plaintiffs, like the other members of the Georgia Class, suffered financial losses and were unjustly required to confer financial benefits on Defendants and their integrated enterprise through the unpaid work, unlawful deductions, wage theft, and unlawful classifications and policies set forth above.

126. Given Plaintiffs' financial losses, Plaintiffs have the incentive, and are committed to vigorous prosecution of this Action.

127. Plaintiffs will fairly and adequately protect the interests of the Georgia class.

128. Plaintiffs have retained counsel experienced in complex misclassification and employment litigation, including wage and hour disputes and unjust enrichment claims.

129.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of litigation involving individual claimants who generally lack the financial resources to vigorously litigate separate lawsuits against a large corporate integrated enterprise as Defendants. The value of quantum meruit and restitution for each individual member of the Georgia Class is small compared to the expense and burden of individual prosecution of this litigation.

130.   Class certification of the Georgia Class is appropriate, because inconsistent or varying adjudications with respect to individual members of the Georgia Class would establish incompatible standards of conduct for Defendants and their integrated enterprise.

131.   Class certification of the Georgia Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants and the integrated enterprise have acted or refused to act on grounds generally applicable to the Georgia Class, thereby making declaratory and injunctive relief appropriate.

132.   Plaintiffs intend to send notice to all members of the Georgia Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## MINNESOTA CLASS ACTION ALLEGATIONS

133.   The Minnesota Plaintiffs bring the Minnesota state law claims on their own behalf and as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. The Minnesota Rule 23 Class is defined as follows:

**Minnesota Class:** All persons who worked for Defendants' integrated enterprise

in Minnesota as a lifeguard, head guard, manager, sub, aquatic director, lesson manager, assistant manager, installments personnel, concessions personnel, customer service relations personnel, or the like at any time from three years prior to the filing of the original Complaint to the entry of judgment in this action, and were not paid their full wages due in a timely manner via a proper method of payment, suffered unlawful fees or deductions, and / or were required to confer benefits on Defendants and their integrated enterprise which Defendants and their integrated enterprise are not legally or equitably permitted to retain.

134. The persons in the Minnesota Class as defined above are so numerous that joinder of all members is impracticable. Although the precise number of such persons in currently unknown, Plaintiffs believe that the class as defined above includes over 35 workers.

135. There are questions of law and fact common to the Minnesota Class that predominate over any questions solely affecting individual members, including, but not limited to:

    a. Whether Plaintiffs and the members of the Minnesota Class were wrongfully classified as "independent contractors" under statutory and common law;

    b. Whether the contracts between Plaintiffs and the members of the Minnesota Class and Defendants and their integrated enterprise are void as a matter of public policy because they:

        i. misclassify Plaintiffs and the members of the Minnesota Class as "independent contractors";

        ii. violate the IRS Determination Letter;

        iii. mandate that minors contract without guardian consent; and

        iv. require payments by Plaintiffs and the members of the Minnesota Class to Defendants and their integrated enterprise in violation of other Federal and Minnesota law;

    c. Whether Defendants and their integrated enterprise required the Minnesota

Plaintiffs and the Minnesota Class to complete pre and / or post-shift work, and retained the value of the wages they should have been paid for that work;

d. Whether Defendants and their integrated enterprise unlawfully withheld $0.40 per hour of the Minnesota Plaintiffs' and the Minnesota Class members' earned wages, and failed to return that money;

e. Whether Defendants and their integrated enterprise retained the value of Plaintiffs' and the Minnesota Class members' work by unlawfully retaining amounts owed to the Minnesota Plaintiffs and the Minnesota Class members for their full hourly wages and overtime payments for their own benefit;

f. Whether Defendants and their integrated enterprise required the Minnesota Plaintiffs and the Minnesota Class members to fund payroll and other expenses by requiring them to pay fees associated with receiving their wages through a credit / pay card;

g. Whether Defendants and their integrated enterprise inequitably retained the benefits wrongly obtained from the Minnesota Plaintiffs and the Minnesota Class as a result of their mandatory attendance at training and in-service sessions without payment for their time and/or while requiring Plaintiffs and the Minnesota Class to pay for the courses;

h. Whether Defendants and their integrated enterprise unlawfully required the Minnesota Plaintiffs and the Minnesota Class to pay them excessive amounts for uniforms and work equipment;

i. Whether Defendants and their integrated enterprise violated the Minnesota Payment of Wages Act by failing to maintain proper records in the proper location, and by not paying the Minnesota Plaintiffs and the Minnesota Class the full amounts of earned wages as a result of off-the-clock work and unlawful direct and indirect deductions;

j. Whether Defendants and their integrated enterprise violated the Minnesota statutes by directly and indirectly taking unlawful deductions;

k. Whether Defendants and their integrated enterprise violated the Minnesota Fair Labor Standards Act by failing to maintain proper records in the proper location, and by not paying the Minnesota Plaintiffs and the Minnesota Class the full amounts of earned wages as a result of off-the-clock work

and unlawful direct and indirect deductions;

l. The formula for calculating the Minnesota Plaintiffs and the Minnesota Class members' damages plus interest, costs, and attorneys' fees.

136. The Minnesota Plaintiffs' claims are typical of those of the Minnesota Class.

137. The Minnesota Plaintiffs, like other members of the Minnesota Class, were subjected to Defendants' policy of misclassifying workers as "independent contractors" rather than "employees," and thereby denying them payment for the full value of work performed, and also requiring them to affirmatively pay for certain business expenses.

138. Defendants' corporate office in Georgia required the Minnesota Plaintiffs' and the other members of the Minnesota Class to sign contracts which are void as a matter of public policy in order to work for Defendants and their integrated enterprise.

139. The Minnesota Plaintiffs, like the other members of the Minnesota Class, suffered financial losses through the unpaid work, unlawful deductions, wage theft, and unlawful classifications and policies set forth above.

140. The Minnesota Plaintiffs, like the other members of the Minnesota Class, received their compensation on a credit / pay card, without prior voluntary consent, in violation of Minnesota law.

141. Given the Minnesota Plaintiffs' financial losses, they have the incentive, and are committed to vigorous prosecution of this Action.

142. The Minnesota Plaintiffs will fairly and adequately protect the interests of the Minnesota class.

143. The Minnesota Plaintiffs have retained counsel experienced in complex misclassification and employment litigation, including Minnesota employment law cases.

144. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of litigation involving individual claimants who generally lack the financial resources to vigorously litigate separate lawsuits against a large corporate integrated enterprise as Defendants. The value of damages for each individual member of the Minnesota Class is small compared to the expense and burden of individual prosecution of this litigation.

145. Class certification of the Minnesota Class is appropriate, because inconsistent or varying adjudications with respect to individual members of the Minnesota Class would establish incompatible standards of conduct for Defendants and their integrated enterprise.

146. Class certification of the Minnesota Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants and the integrated enterprise has acted or refused to act on grounds generally applicable to the Minnesota Class, thereby making declaratory and injunctive relief appropriate.

147. The Minnesota Plaintiffs intend to send notice to all members of the Minnesota Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## MARYLAND CLASS ACTION ALLEGATIONS

148.    Plaintiff Kibbe brings the Maryland state law claims on his own behalf and

as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

The Maryland Rule 23 Class is defined as follows:

> **Maryland Class:** All persons who worked for Defendants' integrated enterprise in
> Maryland as a lifeguard, head guard, manager, sub, aquatic director, lesson
> manager, assistant manager, installments personnel, concessions personnel,
> customer service relations personnel, or the like at any time from three years prior
> to the filing of the original Complaint to the entry of judgment in this action, and
> were not paid their full wages due in a timely manner via a proper method of
> payment, suffered unlawful fees and deductions, and / or were required to confer
> benefits on Defendants and their integrated enterprise which they are not legally or
> equitably permitted to retain.

149.    The persons in the Maryland Class as defined above are so numerous that

joinder of all members is impracticable. Although the precise number of such persons in

currently unknown, Plaintiffs believe that the class as defined above includes over 40

workers.

150.    There are questions of law and fact common to the Maryland Class that

predominate over any questions solely affecting individual members, including, but not

limited to:

    a.  Whether Plaintiff Kibbe and the members of the Maryland Class were
        wrongfully classified as "independent contractors" under statutory and
        common law;

    b.  Whether the contracts between Plaintiff Kibbe and the members of the
        Maryland Class and Defendants and their integrated enterprise are void as a
        matter of public policy because they:

        i.  misclassify Plaintiffs and the members of the Maryland Class as
            "independent contractors";

     ii.   violate the IRS Determination Letter;

     iii.   mandate that minors contract without guardian consent; and

     iv.   required Mr. Kibbe and the members of the Maryland Class to agree to pay practices that are not permitted to be mandatory by an employer under Federal and Maryland law;

c.   Whether Defendants and their integrated enterprise required Plaintiff Kibbe and the Maryland Class to complete pre and / or post-shift work, and retained the value of the wages they should have been paid for that work;

d.   Whether Defendants and their integrated enterprise unlawfully withheld $0.40 per hour of the Plaintiff Kibbe's and the Maryland Class members' earned wages, and failed to return that money;

e.   Whether Defendants and their integrated enterprise unlawfully retained amounts owed to Plaintiff Kibbe and the Maryland Class members for their full hourly wages and overtime payments for their own benefit;

f.   Whether Defendants and their integrated enterprise required the Plaintiff Kibbe and the Maryland Class members to fund payroll and other expenses by requiring them to pay fees associated with receiving their wages through a credit / pay card when voluntary consent was not provided, and Defendants failed to provide advance notice of the fees in 12-point-font;

g.   Whether Defendants and their integrated enterprise failed to pay Plaintiff Kibbe and the Maryland Class for their mandatory attendance at training and in-service sessions and / or required them to involuntarily pay for the courses as unlawful wage deductions;

h.   Whether Defendants and their integrated enterprise unlawfully required the Plaintiff Kibbe and the Maryland Class to pay them without advance written voluntary consent for uniforms and work equipment;

i.   Whether Defendants and their integrated enterprise violated the Maryland Wage Payment and Collection Law by not timely paying the Plaintiff Kibbe and the Maryland Class the full amounts of earned wages as a result of off-the-clock work and unlawful direct and indirect deductions and fees;

j.   Whether Defendants and their integrated enterprise violated the Maryland Code by directly and indirectly taking unlawful deductions without proper

consent;

k. The formula for calculating the Minnesota Plaintiffs and the Minnesota Class members' damages plus interest, costs, and attorneys' fees.

151. Plaintiff Kibbe's claims are typical of those of the Maryland Class.

152. Plaintiff Kibbe, like other members of the Maryland Class, was subjected to Defendants' policy of misclassifying workers as "independent contractors" rather than "employees," and thereby denying them payment for the full value of work performed, and also requiring them to affirmatively pay for certain business expenses without appropriate consent.

153. Defendants' corporate office in Georgia required Plaintiff Kibbe and the other members of the Maryland Class to sign contracts which are void as a matter of public policy in order to work for Defendants and the integrated enterprise.

154. Mr. Kibbe, like the other members of the Maryland Class, suffered financial losses through the unpaid work, unlawful deductions, wage theft, unlawful fees, and unlawful classifications and policies set forth above.

155. Given Plaintiff Kibbe's financial losses, he has the incentive, and is committed to vigorous prosecution of this Action.

156. Plaintiff Kibbe will fairly and adequately protect the interests of the Maryland class.

157. Plaintiff Kibbe has retained counsel experienced in complex misclassification and employment litigation, including multi-jurisdictional wage and hour litigation.

158. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of litigation involving individual claimants who generally lack the financial resources to vigorously litigate separate lawsuits against a large corporate integrated enterprise as Defendants. The value of damages for each individual member of the Maryland Class is small compared to the expense and burden of individual prosecution of this litigation.

159. Class certification of the Maryland Class is appropriate, because inconsistent or varying adjudications with respect to individual members of the Maryland Class would establish incompatible standards of conduct for Defendants and their integrated enterprise.

160. Class certification of the Maryland Class is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants and the integrated enterprise has acted or refused to act on grounds generally applicable to the Maryland Class, thereby making declaratory and injunctive relief appropriate.

161. Plaintiff Kibbe, through his counsel, intends to send notice to all members of the Maryland Class to the extent required by Rule 23 of the Federal Rules of Civil Procedure.

## **RETALIATION ALLEGATIONS ON BEHALF OF PLAINTIFF KIBBE**

162. After the original Complaint in this Action was filed on April 11, 2014, and Defendants were served with the original Complaint, Defendants stopped paying Plaintiff Kibbe reimbursements for his expenses, and failed to pay him ongoing wages he had earned.

163.   Plaintiff Kibbe requested payment for his unreimbursed expenses and the wages he had recently earned, but Defendants failed to issue payment.

164.   Plaintiff Kibbe notified Defendants that he did not have sufficient funds to purchase gasoline to fill his vehicle so that he could complete the site visits Defendants required him to complete. He requested payment so that he could continue to do his job.

165.   On July 9, 2014, Defendants' manager John Williams emailed Plaintiff Kibbe and his supervisors stating that he was being placed on unpaid leave. Mr. Williams explained, "There will be no team member represent (sic) this company negatively. Mr. Kibbe has a problem that he cannot resolve and this problem is negatively impacting the companies [sic] ability to serve. Until this matter is resolved to my satisfaction Mr. Kibbe will not be authorized to work. I encourage you both to identify if Mr Kibbe's attitude and problem solving ability will allow him to continue to serve."

166.   Plaintiff Kibbe responded to Mr. Williams and explained that he intended to continue to serve Defendants in a positive and productive manner, but that he needed reimbursement for his expenses to be able to continue working. He provided a copy of all of his receipts.

167.   Mr. Williams responded on July 19, 2014 by terminating Plaintiff Kibbe's employment with Defendants. He stated that Defendants would send Plaintiff Kibbe's "final check and reimbursement" to him after Defendants obtained possession of the company vehicle, training equipment, and telephone. Mr. Williams then stated "Any attempts to retain company equipment will be considered theft and I will notify the police

immediately."

168.   On July 21, 2014, Mr. Williams emailed Plaintiff Kibbe, falsely accusing him of "refusing to return the USA Management vehicle, phone and training equipment." Mr. Williams stated that Defendants were filing false criminal felony charges of theft against Plaintiff Kibbe.

169.   Plaintiff Kibbe responded by informing Mr. Williams that the truck and training equipment had always been available for pickup.  He informed Mr. Williams of the location of the truck and training equipment, and reminded Mr. Williams that he did not have a company telephone.  He again asked when he would receive payment for his expenses.

170.   Mr. Williams responded on July 22, 2014 by informing Plaintiff Kibbe that Defendants had "filed the police report" and that a "detective will be calling [Plaintiff Kibbe] in the coming days."   He went on to explain how the criminal process and upcoming civil case would be handled.

171.   Plaintiff Kibbe's counsel thereafter sent a "cease and desist" letter to Defendants regarding these false and fraudulent allegations and potential police reports.

172.   Defendants refused to pay Plaintiff Kibbe for expenses and wages earned and owed to him, placed him on unpaid leave, terminated his employment, and threatened to and / or filed false police reports with false allegations against Plaintiff Kibbe in retaliation because he filed the original Complaint in this lawsuit and because he repeatedly reported to Defendants that they were violating wage and hour laws.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT
### (On Behalf of Plaintiffs and the Collective Class)

173.     Plaintiffs and the Collective Class reallege and incorporate by reference the above paragraphs as if fully set forth herein.

174.     Plaintiffs and some of the putative Collective Class members consent in writing to be part of this action pursuant to 29 U.S.C. § 216(b). As the case proceeds, it is likely that other individuals will also execute and file consent forms.

175.     At all times relevant to this Complaint, Defendants have been and continue to be an "employer" engaged in "interstate commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA 29 U.S.C. § 203(d).

176.     At all relevant times, Defendants have had annual gross volumes of sales and business exceeding $500,000.  29 U.S.C. § 203(s)(1)(A)(i) and (ii).

177.     At all relevant times, Defendants have been, and continue to be, an "employer," and Plaintiffs and the members of the putative Collective Class have been, or continue to be, "employees" as defined under common law and within the meaning of 29 U.S.C. § 203.

178.     The FLSA requires Defendants to compensate all non-exempt employees at a rate not less than minimum wage and one and one-half times their regular rate of pay for work performed in excess of forty (40) hours per week. As such, Plaintiffs and members of the putative Collective Class are entitled to minimum wage and overtime compensation at one-and-one-half times their regular rate of pay for work performed in excess of 40 hours per week.

179.    Plaintiffs and the putative Collective Class they seek to represent were and are paid hourly and are not exempt from the FLSA.

180.    By wrongfully classifying Plaintiffs and the putative Collective Class as "independent contractors," requiring them to work during unpaid time, and taking deductions from their wages, Defendants have failed to pay them minimum wage and overtime pay.   As a result, Defendants violated, and continue to violate the FLSA, 29 U.S.C. § 201 et seq.

181.    Defendants failed to make, keep and preserve records with respect to each of the Plaintiffs and the putative Collective Class members, sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

182.    The foregoing conduct, as alleged, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

183.    By reason of the foregoing, Plaintiffs and the putative Collective Class members have suffered lost wages.

184.    Plaintiffs, on behalf of themselves and the putative Collective Class, seek damages in the amount of their unpaid minimum wage and overtime wages, an equal amount as liquidated damages, interest, all costs and attorney's fees incurred in prosecuting this claim, all other relief available under the FLSA, including but not limited to all other such legal and equitable relief as the Court deems just and proper. 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## EMPLOYEE RETIREMENT INCOME SECURITY ACT
### (On Behalf of Plaintiffs and the ERISA Class)

185.     Plaintiffs and the ERISA Class reallege and incorporate by reference the above paragraphs as if fully set forth herein.

186.     At all relevant times, Defendants were, and continue to be, a covered "employer," and Plaintiffs and the members of the ERISA Class were, or continue to be, "employees" of Defendants under common law and within the meaning of ERISA. See 29 U.S.C. § 1003.

187.     Defendants have established and maintained "employee benefit plans" as defined in 29 U.S.C. § 1002, including, but not limited to, health, dental, and vacation pay plans.

188.     Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a plan participant or beneficiary to recover benefits due under the terms of a plan and to enforce rights under the terms of the plan.

189.     By wrongfully classifying Plaintiffs and members of the ERISA Class as "independent contractors" instead of "employees," Defendants intentionally denied Plaintiffs and members of the ERISA Class the benefits to which they were, or are, entitled as beneficiaries under the benefit plans.

190.     Any attempt by Plaintiffs and members of the ERISA Class to exhaust administrative remedies provided pursuant to the benefit plans would have been, and would continue to be, futile.

191.     Plaintiffs, on behalf of themselves and the ERISA Class, seek unpaid

benefits, prejudgment interest, costs, and attorney's fees.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF GEORGIA CODE § 34-7-2**
**(On behalf of Plaintiffs and the Georgia Class)**

192.    Plaintiffs and the Georgia Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

193.    Defendants and their integrated enterprise, through their corporate office in Georgia, are an "employer" for purposes of Georgia Code § 34-7-2, and Plaintiffs and the Georgia Class were Defendants' and their integrated enterprise's employees.

194.    Georgia Code § 34-7-2 requires employers to pay the full amount of earned wages and salaries due to workers at least twice per month in the form of: (1) lawful money of the United States; (2) by check; or (3) "with the consent of the employee, by authorization of credit transfer to his account with a bank, trust company, or other financial institution authorized . . . to received deposits in the United States."

195.    Defendants and their integrated enterprise violated Georgia Code § 34-7-2 when they failed to pay Plaintiffs and the Georgia Class members the full amount of their earned and due wages and salaries twice per month by denying them pay for all amounts owed, shifting costs of business expenses onto Plaintiffs and the Georgia Class so that their net wages were significantly reduced below the earned and due amount, by deducting additional amounts from their earned wages, and by delaying payment on other amounts owed.

196.    Defendants and their integrated enterprise violated Georgia Code § 34-7-2 when they required Plaintiffs and the Georgia Class to receive payment for their wages

through a credit / pay card account established by Defendants and their integrated enterprise through their Georgia corporate office. Plaintiffs and the Georgia Class did not receive their wages through lawful money, check, or at their own accounts after giving voluntary consent to such payment method.

197. As a result of Defendants' and their integrated enterprise's violations of Georgia Code § 34-7-2, Plaintiffs and the Georgia Class have suffered lost wages, interest, additional forced payments by the pay card institution to receive their wages, and attorneys' fees and costs in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**GEORGIA UNJUST ENRICHMENT / QUANTUM MERUIT**
**(On behalf of Plaintiffs and the Georgia Rule 23 Class)**

198. Plaintiffs and the Georgia Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

199. The contracts Defendants and their integrated enterprise required Plaintiffs and the Georgia Class to execute with their corporate office in Georgia are void as a matter of public policy, and because they are against the law.

200. By requiring Plaintiffs and the members of the Georgia Class to pay expenses associated with their employment, training, and payroll, by making unlawful deductions from their wages, by denying them reasonable wages for all of the work they performed, and by denying them health and welfare benefits and other rights and privileges to which they were entitled, Defendants and their integrated enterprise, through their corporate office in Georgia, obtained substantial benefits at Plaintiffs' and the members of the Georgia Class's expense, and have been unjustly enriched.

201. It would be inequitable for Defendants and their integrated enterprise to be permitted retain those benefits at Plaintiffs' and the Georgia Class's expense.

202. As a result of Defendants' and their integrated enterprise's unjust enrichment, Plaintiffs and the members of the Georgia Class are entitled to recover restitution damages and the reasonable value of their services in quantum meruit, in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
### VIOLATIONS OF THE MINNESOTA PAYMENT OF WAGES ACT
**(On behalf of the Minnesota Plaintiffs and the Minnesota Rule 23 Class)**

203. Plaintiffs and the Minnesota Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

204. Defendants were the Minnesota Plaintiffs' and the Minnesota Class members' "employer," and they were Defendants' "employees" for purposes of the Minnesota Payment of Wages Act.

205. Pursuant to Minn. Stat. § 181.02, Defendants were prohibited from paying the Minnesota Plaintiffs' and Minnesota Class members' wages through a nonnegotiable instrument. Defendants violated this law by paying the Minnesota Plaintiffs through a pay / credit card account which was in violation of Minn. Stat. § 177.255.

206. Pursuant to Minn. Stat. § 181.101, Defendants were required to pay the Minnesota Plaintiffs and Minnesota Class members all wages earned and owed to them within 31 days of when they performed work.

207. Defendants failed to comply with Minn. Stat. § 181.101 by failing to pay the Minnesota Plaintiffs and Minnesota Class members for all hours worked, failing to

pay the required overtime payments, and by unlawfully directly and indirectly taking deductions from their earned wages so that they did not receive the full amounts earned.

208. Pursuant to Minn. Stat. § 181.03, Defendants may not "directly or indirectly and with intent to defraud:

(1) cause any employee to give a receipt for wages for a greater amount than that actually paid to the employee for services rendered;

(2) directly or indirectly demand or receive from any employee any rebate or refund from the wages owed the employee under contract of employment with the employer; or

(3) in any manner make or attempt to make it appear that the wages paid to any employee were greater than the amount actually paid to the employee."

209. Defendants violated Minn. Stat. § 181.03 by issuing contracts to the Minnesota Plaintiffs and the Minnesota Class which intentionally and fraudulently stated that they were "independent contractors" in violation of Minn. Stat. § 181.722, even though Defendants had previously been admonished by the Internal Revenue Services that they were not.

210. Defendants further caused the Minnesota Plaintiffs and the Minnesota Class to give receipts for wages and otherwise attempted to make it appear as though they received an hourly rate of pay and total pay that exceeded the actual amounts received after they were required to pay Defendants' share of employer taxes and additional unlawful deductions and fees and charges for pay card services were withheld.

211. In addition, Defendants demanded a rebate or refund from the Minnesota Plaintiffs and the Minnesota Class members' wages at a rate of $0.40 per hour, ostensibly for an end of the year "bonus," which the Minnesota Plaintiffs and the Minnesota Class

43

never received in full.

212.     Pursuant to Minn. Stat. § 181.031, Defendants were prohibited from demanding any portion of an employee's wages or consideration in consideration for securing employment.

213.     Defendants violated Minn. Stat. § 181.031 by requiring the Minnesota Plaintiffs and the Minnesota Class: (a) to agree to use and pay fees associated with an unlawful pay card to remain employed; (b) to agree to pay Defendants USA Pools of Georgia, Inc. and USA Pools of Illinois, Inc. $0.40 per hour out of their pay, which was never fully reimbursed; (c) to purchase expensive uniforms and equipment which exceeded amounts permitted by statute and reduced their wages below the minimum wage; and (d) to agree to allow Defendants USA Pools of Georgia, Inc. and USA Pools of Illinois, Inc. to take their earned wages beyond minimum wage if they did not work more than a specified number of hours and weeks.

214.     As a result of Defendants' violations of the Minnesota Payment of Wages Act, the Minnesota Plaintiffs and the Minnesota Class suffered lost wages and other damages in the form of direct and indirect unlawful deductions.

215.     The Minnesota Plaintiffs, on behalf of themselves and the Minnesota Class, seek to recover damages, compensatory damages, injunctive relief, double damages, civil penalties, and attorneys' fees and costs for violations of the Minnesota Payment of Wages Act.

## SIXTH CLAIM FOR RELIEF
## MINNESOTA UNLAWFUL DEDUCTIONS
### (On behalf of the Minnesota Plaintiffs and the Minnesota Rule 23 Class)

216. Plaintiffs and the Minnesota Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

217. Defendants were the Minnesota Plaintiffs' and the Minnesota Class members' "employer," and they were Defendants' "employees" for purposes of Minn. Stat. §§ 177.24, 177.255, and 181.79.

218. Pursuant to Minn. Stat. § 177.24, subd. 4, Defendants were prohibited from deducting the cost of a uniform or equipment if the cost exceeded $50.00 and the uniforms or equipment were specialized and not appropriate for other use, or if the cost of the deduction would reduce the employees' wages below minimum wage.

219. Defendants violated Minn. Stat. § 177.24 by requiring Minnesota Plaintiffs and the Minnesota Class to pay exorbitant costs for Defendants' company-issued required uniforms and equipment with no reimbursement for those costs, even though the cost of the uniforms frequently reduced their wages below minimum wage.

220. Pursuant to Minn. Stat. § 181.79, Defendants were prohibited from directly or indirectly taking deductions from employees' wages for any kind of indebtedness running from the employee to the employer unless the employee voluntarily authorized the deduction in writing after the indebtedness arose.

221. Minn. Stat. § 181.79 also states, "Any agreement entered into between an employer and an employee contrary to this section shall be void."

222. Defendants violated Minn. Stat. § 181.79 by requiring the Minnesota

Plaintiffs and Minnesota Class to sign contracts in violation of Minn. Stat. § 181.79, in which they were required to agree to allow Defendants to take direct and indirect deductions from their wages, pay fees associated with the pay card system, and take a wage reduction if they did not work enough hours or enough weeks during a season.

223.    Pursuant to Minn. Stat. § 177.255 and Minn. Stat. § 177.24, subd. 4, Defendants were not permitted to pay employees via a pay / credit card account unless the employees provided written voluntary consent in advance, and the withdrawal of wages from the account was free, meaning there were no fees charged to the employees. In addition, Defendants were required to file a notice regarding the pay card with the Commissioner.

224.    Defendants violated Minn. Stat. § 177.255 and Minn. Stat. § 177.24, subd. 4 by failing to obtain voluntary advance written consent for the use of the pay / credit card, and by failing to provide free access to the Minnesota Plaintiffs' and Minnesota Class members' wages and requiring them to pay fees associated with obtaining access to their wages.

225.    In addition, Defendants violated Minnesota law by failing to file the requisite notice with the Commissioner.

226.    As a result of Defendants unlawful deductions, the Minnesota Plaintiffs and the Minnesota Class suffered lost wages and other damages in the form of direct and indirect unlawful deductions.

227.    The Minnesota Plaintiffs, on behalf of themselves and the Minnesota Class, seek to recover damages, compensatory damages, injunctive relief, double damages, civil

penalties, and attorneys' fees and costs for violations of the Minnesota Payment of Wages Act.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT**
**(On behalf of the Minnesota Plaintiffs and the Minnesota Rule 23 Class)**

228.　Plaintiffs and the Minnesota Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

229.　Defendants were the Minnesota Plaintiffs' and the Minnesota Class members' "employer," and they were Defendants' "employees" for purposes of the Minnesota Fair Labor Standards Act.

230.　Pursuant to Minn. Stat. § 177.24, Defendants were required to pay at least $6.15 per hour for all hours worked, and one and one-half times the hourly rate of pay for all hours worked in excess of 48 in a workweek.

231.　Defendants failed to pay the Minnesota Plaintiffs and the Minnesota Class members minimum wage and overtime as required by law, because they were not paid for any pre-shift or post-shift work they completed, training time, or overtime hours, and the deductions from their wages reduced them below the required minimum wage at times.

232.　Pursuant to Minn. Stat. § 177.30, Defendants were also required to maintain, in or near the premises where an employee works, a record of the following information regarding the Minnesota Plaintiffs and Minnesota Class members: (1) the name, address, and occupation of each employee; (2) the rate of pay, and the amount paid each pay period to each employee; (3) the hours worked each day and each workweek by

the employee; and (4) other information the commissioner deems necessary.

233. Defendants failed to maintain the required records in the required location.

234. As a result of Defendants' unlawful failure to pay minimum wage and overtime wages, the Minnesota Plaintiffs and the Minnesota Class suffered lost wages and other damages in the form of unpaid wages.

235. The Minnesota Plaintiffs, on behalf of themselves and the Minnesota Class, seek to recover damages, compensatory damages, injunctive relief, double damages, civil penalties, and attorneys' fees and costs for violations of the Minnesota FLSA.

236. The Minnesota Plaintiffs, on behalf of themselves and the Minnesota Class, seek declaratory relief and to recover penalties for the Commissioner of the Department of Labor in the amount of $1,000 per violation for the record-keeping violations.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF THE MARYLAND WAGE PAYMENT & COLLECTION LAW
### (On behalf of George Kibbe and the Maryland Rule 23 Class)

237. Plaintiffs and the Maryland Class restate and incorporate by reference the above paragraphs as if fully set forth herein.

238. Defendants were Plaintiff Kibbe and the Maryland Class members' "employer," and they were Defendants' "employees" for purposes of the Maryland Wage Payment and Collection Law.

239. Pursuant to MD Code, Labor and Employment, § 3-502(f), an agreement to work for less than the wage required under that chapter "is void."

240. Defendants' contracts with Plaintiff Kibbe and the Maryland Plaintiffs are void.

241.     Pursuant to MD Code, Labor and Employment, § 3-502(c)-(e), Defendants were required to pay wages owed at least twice monthly either "in United States currency" or "by a check that, on demand, is convertible at face value into United States currency."  Pay card accounts are only permissible if the employee voluntarily authorizes wage payments through that method, and fees associated with the accounts are disclosed in advance in at least 12-point font.

242.     Defendants violated MD Code, Labor and Employment, § 3-502(c)-(e) by requiring Plaintiff Kibbe and the Maryland Class to receive payments on a mandatory pay card without obtaining advance voluntary consent, and by shifting fees onto Plaintiff Kibbe and the Maryland Class which were not properly disclosed in advance.

243.     Pursuant to MD Code, Labor and Employment § 3-503, Defendants were prohibited from taking deductions from wages without express, voluntary advance authorization in writing from the employee.

244.     Defendants violated MD Code, Labor and Employment § 3-503 by taking deductions from Plaintiff Kibbe and the Maryland Class's wages without express voluntarily authorization to do so.

245.     Pursuant to MD Code, Labor and Employment § 3-505, Defendants were required to pay Mr. Kibbe and the Maryland Class "all wages due for work [they] performed prior to the termination of employment, on or before the day on which [they] would have been paid the wages if the employment had not been terminated."

246.     Defendants violated MD Code, Labor and Employment § 3-505 by failing to pay all wages due for work performed prior to the termination of Mr. Kibbe's and the

Maryland Class member's employment, when they were terminated or resigned within the three year period prior to the filing of this Complaint.

247.    More than two weeks have elapsed from the date on which Defendants were required to pay the wages, including the value of the improper deductions, and they still have not paid the wages to Plaintiff Kibbe and the Maryland Class in full.

248.    As a result of Defendant's violations of the Maryland Wage Payment and Collection Law, Plaintiff Kibbe and the Maryland Class have suffered damages in the form of lost wages resulting from unpaid work time, unlawful deductions from wages, and unlawful fees charged, as well as attorneys' fees and costs.

249.    Plaintiff Kibbe, on behalf of himself and the Maryland Class, seek to recover the value of the lost wages, deductions, and fees, treble damages, and reasonable attorneys' fees and costs.

<u>**NINTH CLAIM FOR RELIEF**</u>
**RETALIATION IN VIOLATION OF THE FLSA, 29 U.S.C. § 215(a)(3)**
**(On behalf of George Kibbe)**

250.    Plaintiff Kibbe incorporates the above paragraphs as if fully restated herein.

251.    Pursuant to 29 U.S.C. § 215(a)(3) of the Fair Labor Standards Act, it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . ."

252.    Defendants violated 29 U.S.C. § 215(a)(3) by refusing to pay Plaintiff Kibbe for expenses and wages earned and owed to him, placing him on unpaid leave,

terminating his employment, and threatening to and / or filing false police reports about Plaintiff Kibbe because he filed the original Complaint in this lawsuit and because he repeatedly reported to Defendants that they were violating wage and hour laws.

253.   Defendants' actions were willful and in bad faith.

254.   As a result of Defendants' retaliatory conduct, Plaintiff Kibbe has suffered lost wages and benefits, lost expense reimbursements, emotional distress damages, and attorneys' fees and costs.

255.   Plaintiff Kibbe seek damages in the amount of his unpaid wages and benefits, emotional distress damages, an equal amount as liquidated damages, costs and attorney's fees incurred in prosecuting this claim, punitive damages, and all other relief available under the FLSA, including but not limited to all other such legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A. That Defendants and their affiliates are determined and adjudicated to be an "integrated enterprise" acting as a single unified employer operating out of the Georgia corporate office;

B. That Defendants and their affiliates are determined and adjudicated to be an "joint employer" acting as a single unified employer operating out of the Georgia corporate office;

C. That Plaintiffs and the putative collective and class action members be determined and adjudicated to be "employees" of Defendants under common law and relevant state and federal statutes;

D. For class certification and designation of the respective Plaintiffs as class representatives and their counsel as class counsel for each of the respective collective and Rule 23 classes set forth above;

E.  On behalf of Plaintiffs and the FLSA Collective Class, that Defendants' and their integrated enterprise's practices complained of herein be determined and adjudged to be violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and for damages in the amount of Plaintiffs' and each member of the Collective Class's unpaid minimum wage and overtime wages, an equal amount as liquidated damages, interest, all costs and attorney's fees incurred in prosecuting this claim, and all other relief available under the FLSA;

F.  On behalf of Plaintiffs and the ERISA Class, that Defendants' and their integrated enterprise's practices complained of herein be determined and adjudicated to be violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., and for an award of damages in the amount of Plaintiffs' and the ERISA Class's unpaid benefits, interest, costs and attorney's fees, and all other relief available under ERISA;

G.  On behalf of Plaintiffs and the Georgia Class, that Defendants' and their integrated enterprise's practices complained of herein be determined and adjudicated to be violations of Georgia Code § 34-7-2, and for an award of all damages flowing from such violations, interest, costs and attorneys' fees, and all other relief, penalties, damages, injunctive, or equitable relief available for violations of the statute;

H.  On behalf of Plaintiffs and the Georgia Class, that Defendants' and their integrated enterprise's practices complained of herein be determined and adjudicated to unjustly enrich Defendants, and for an award of restitution and quantum meruit, as well as all other relief available;

I.  On behalf of the Minnesota Plaintiffs and the Minnesota Class, that the practices of Defendants and their integrated enterprise complained of herein be determined and adjudicated to be violations of the Minnesota Payment of Wages Act, and for an award of damages in the amount of their unpaid wages and unlawful deductions, an equal amount as liquidated damages, interest, reasonable costs, disbursements, witness fees, and attorney's fees, all other relief available under the MPWA.

J.  On behalf of the Minnesota Plaintiffs and the Minnesota Class, that the practices of Defendants and their integrated enterprise complained of herein be determined and adjudicated to be violations of Minn. Stat. §§ 177.24, 177.255, and 181.79, and for an award of damages in the amount of their unpaid wages and unlawful deductions, an equal amount as liquidated damages, interest, reasonable costs, disbursements, witness fees, and attorney's fees, all other relief available in law or in equity;

K. On behalf of the Minnesota Plaintiffs and the Minnesota Class, that the practices of Defendants and their integrated enterprise complained of herein be determined and adjudged to be violations of the Minnesota Fair Labor Standards Act, and for damages in the amount of their unpaid wages, an equal amount as liquidated damages, interest, reasonable costs, disbursements, witness fees, and attorney's fees, all other relief available under the MFLSA;

L. On behalf of Plaintiff Kibbe and the Maryland Class, that the practices of Defendants and their integrated enterprise complained of herein be determined and adjudged to be violations of the Maryland Wage Payment and Collections Law, and for damages in the amount of their unpaid wages, deductions and fees, treble damages, interest, reasonable costs, disbursements, witness fees, and attorney's fees, all other relief available under the MFLSA;

M. On behalf of Plaintiff Kibbe, that the practices of Defendants and their integrated enterprise / joint employer complained of herein be determined and adjudged to be violations of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and for damages in an amount equal to his unpaid wages and benefits, liquidated damages, emotional distress damages, reasonable costs and attorneys' fees, punitive damages, and all other relief available under the FLSA.

N. That Plaintiffs be granted leave to amend their Complaint to add relevant state law claims of the similarly situated individuals;

O. That Plaintiffs be awarded all attorney's fees and costs incurred in prosecuting this action; and

P. For all such further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs on behalf of themselves and on behalf of others similarly situated demand a trial by jury.

Respectfully submitted,

SCHAEFER HALLEEN, LLC

Date: July 31, 2014

/s/ Bryce M. Miller
Bryce M. Miller
MN Attorney ID#: 386901
 bmiller@schaeferhalleen.com
Brian T. Rochel
MN Attorney ID#: 391497
 brochel@schaeferhalleen.com
400 South Fourth Street, Suite 202
Minneapolis, MN 55415
Telephone: (612) 294-2600
Facsimile: 612-294-2640


SHANNON LAW, LLC

Adrianna H. Shannon
MN Attorney ID#: 0387799
 ashannon@shannonlawllc.com
15105 Minnetonka Ind. Rd., Ste. 101
Minnetonka, MN 55345
Telephone: (952) 679-8868
Facsimile: (952) 241-9201

COUNSEL FOR THE PLAINTIFFS